UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00734-CRS-CHL

AWP, INC,                                                                                                                                                           **Plaintiff,**

v.

SAFE ZONE SERVICES, LLC, et al.,                                                **Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to overrule a designation of certain financial information as "Attorneys' Eyes Only" (the "Motion") filed by Defendants Safe Zone Services, LLC, United Electric Company, Inc., Daniel Walsh, and Mark Hatcher (collectively the "Moving Defendants"). (DN 84.)[1] Plaintiff AWP, Inc. ("Plaintiff") filed a response in opposition (DN 86) to which the Moving Defendants filed a reply (DN 89). Therefore, the motion is ripe for review.

**I.    BACKGROUND**

Plaintiff filed this action on October 19, 2019, and currently alleges breach of contract, tortious interference with contract and business relationships, misappropriation of trade secrets, breach of fiduciary duty and duty of loyalty, unfair competition, and civil conspiracy. (DN 54.) Plaintiff alleges as grounds for these causes of action that Defendant Safe Zone Services, LCC

---

[1] Pursuant to the Court's June 4, 2020 scheduling order, motions pertaining to unresolved discovery disputes may not be filed without first having telephonic status conference. (DN 39, at PageID # 283.) No such status conference was requested concerning the instant Motion, and the Moving Defendants were not otherwise granted leave to file the Motion. The Moving Defendants are aware of the requirement; they have requested telephonic status conferences on two prior occasions to discuss objections to Plaintiff's AEO designations. (DN 52, 76.) In both instances the Parties were granted leave to proceed to motion practice, with specific deadlines and filing limitations being set. (*Id.*) While the Moving Defendants' flouting the scheduling order and the Court's authority to control the docket are grounds to deny the Motion, in the interest of efficiency and because Plaintiff does not object the motion on these grounds, the Court will consider the motion. *The Moving Defendants are reminded of their obligation to comply with orders of the Court.*

recruited and hired at least twenty-eight of Plaintiff's former employees, many of whom were subject to non-compete provisions in their employment contracts with Plaintiff. (*Id.*)

On July 29, 2020, the Parties entered into a confidentiality agreement (the "Agreement"), which governs the use of documents obtained during discovery in this case. (DN 66-2.) The Agreement sets forth various restrictions for documents designated by the disclosing party as either "Confidential" or "Confidential for Outside Attorneys' Eyes Only" ("AEO"). (*Id.*, at PageID # 906-07.) Under the Agreement, documents designated as Confidential may not be disclosed to anyone not involved in this litigation, and documents designated as AOE receive further protection from disclosure to the Parties in this action and their in-house counsel unless the AEO information is redacted from the document. (*Id.*, at PageID # 907-09.)

The Agreement sets forth criteria for designating documents as Confidential or AEO and procedures for receiving Parties to challenge a designation. (*Id.*, at 906-07, 911.) Under the Agreement, a Party may designate a document as Confidential if it is "entitled to confidential treatment under existing statutory or case law, including documents, materials or information containing or reflecting a trade secret(s) and/or other confidential research, development, employee, patient, medical, financial, product, customer data or business information." (*Id.*, at PageID # 906.) A Party may designate a document as AEO if it contains:

> confidential documents, materials, or information that, in addition to being designated and treated as confidential, is designated in good faith by a party to be of such a higher level of sensitivity such that disclosure to a party is likely to be damaging to the producing party, regardless of the steps taken to protect it. 'Confidential for Outside Attorneys' Eyes Only' documents, materials, or information constitutes information which is so highly sensitive that its disclosure, even though subject to this Agreement, would reasonably be expected to create a significant risk of injury and to impart unfair advantage to the party receiving the information.

(*Id.*, at PageID # 907.) Any Party seeking to challenge a confidential or AEO designation must notify the designating Party. (*Id.*, at PageID # 911.) The challenging and designating Party must "first try to resolve such a dispute in good faith." (*Id.*) If they are unable to do so, the Parties must schedule a telephonic status conference with the Court and seek leave to file a motion to enforce the Agreement. (*Id.*) Upon such a motion, "the designating party shall bear the burden of establishing that the documents in question are confidential and are properly designated as 'Confidential [sic] or '[AEO].'" (*Id.*)

On April 5, 2021, Plaintiff produced a document summarizing its total sales, expenses by category, and total gross profits from its Louisville facility for the years 2017 through 2020. (DN 84, at PageIID # 997-98.) Plaintiff designated the document as AEO. (*Id.*, at PageID # 998.) On April 5, 2021, the Moving Defendants notified Plaintiff of their objection to the AEO designation. (DN 84-4, at PageID # 1028-29.) Specifically, the Moving Defendants stated that the "yearly gross profits are neither broken down by nor attributed to any particular customer(s), and therefore, AWP, Inc.'s [sic] cannot plausibly suggest that the disclosure of any information set forth in the attached document would 'create a significant risk of injury and to impart unfair advantage to the party receiving the information." (*Id.*) On April 14, 2021, the Moving Defendants offered a compromise, proposing that the expense information remain AEO and the total sales and gross profit information be redesignated as Confidential. (*Id.*, at PageID # 1024-25.) On April 16, 2021, Plaintiff responded that it is wiling to redesignate the total sales information, but "is not agreeable to re-designate the 'Gross Profit Direct' figures as Confidential because doing so would allow AWP's competitor to derive AWP's profit margin, which would risk injury to AWP and impart unfair advantage to Safe Zone." (*Id.*, at PageID # 1020.) The Moving Defendants then declared an impasse and informed Plaintiff they would seek the Court's intervention. (*Id.*)

## II. LEGAL STANDARD

This Court maintains discretion over the scope of discovery. *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.1981)). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This includes "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). If during the course of discovery, "it is or should become necessary to reveal the secrets to others, it will rest in the judge's discretion to determine whether, to whom, and under what precautions, the revelation should be made." *E. I. Du Pont De Nemours Powder Co. v. Masland*, 244 U.S. 100, 103, 37 S. Ct. 575, 576, 61 L. Ed. 1016 (1917). *See Federal Open Market Committee of Federal Reserve System v. Merrill*, 443 U.S. 340, 362 n. 24, 99 S. Ct. 2800, 2813 n. 24, 61 L. Ed. 2d 587 (1979) ("[O]rders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties.")

## III. DISCUSSION

Below, the Court addresses whether Plaintiff's gross profit information is entitled to confidential treatment, and if so, whether it is entitled to heightened protection as AEO under the Agreement. The Moving Defendants don't dispute that the gross profit information constitutes confidential information, and in fact, they argue that the Confidential designation is proper. (DN 84, at PageID # 1000.) The Court will therefore assume that the confidentiality requirement is met and proceed to determine whether disclosure "would reasonably be expected to create a significant risk of injury and to impart unfair advantage to the party receiving the information."

The Moving Defendants argue that it is not justified to designate the gross profit information as AEO, especially given that they have already agreed to the AEO designation for data concerning Plaintiff's expenses. (*Id.*) The Moving Defendants further argue that any potential risk of harm would be undercut by the less stringent Confidential designation, which precludes them from using the documents outside of this litigation for any purpose. (*Id.*) On the other hand, the Moving Defendants believe that they will be prejudiced if the documents at issue retained the AEO designation because they "go to the heart of Plaintiff's claims against Defendants." (*Id.*) They argue that prohibiting them from viewing the documents Plaintiff alleges that they misappropriated "prevents Defendants from being reasonably informed and understanding the claims asserted against them in this action." (*Id.*)

In response, Plaintiff states that removing the AEO designation would require it to disclose closely guarded information to its competitor, resulting in "a significant advantage over [Plaintiff] in securing further busines in the marketplace." (DN 86, at PageID # 1084.) Specifically, Plaintiff notes that with access to both its total sales figures and gross profit figures, a competitor could calculate Plaintiff's profit margin and then "adjust its own pricing and profit margin in an attempt to gain market share." (*Id.*, at PageID # 1042.) Plaintiff also states that Defendant United Electric is a former customer of AWP and Defendant Safe Zone, LLC's "sister company." (*Id.*) Plaintiff thus argue that knowledge of Plaintiff's profit margin combined with United Electric's knowledge of Plaintiff's pricing enables them to collude to "freeze [Plaintiff] out of the market." (*Id.*)

Plaintiff disputes Defendant's argument that the Confidential designation is sufficient to protect its interests. Plaintiff cites to *Specialty Auto Parts USA, Inc. v. Holley Performance Prod., Inc.*, 2020 WL 1914817 (W.D. Ky. Apr. 20, 2020*)* an action between competitors in which this Court upheld AEO designations for various documents containing financial and

5

business information, finding that a confidential designation was insufficient. (*Id.*) There, the Court reasoned that "it would be naïve to believe that information gained by [the plaintiff] about [the defendant]'s trade secrets would not, to some degree, inform [the plaintiff]'s own business decisions, whether intentional or not. Any violation of a 'confidential' designation that bars the use of information and documents outside of this litigation could be incredibly difficult to prove and, thus, not easily remedied." *Specialty*, 2020 WL 1914817 at *9. Plaintiff argues that the Moving Defendants cannot be trusted not to capitalize on this potential advantage because of the past conduct Plaintiff alleges, which includes interference with contractual restrictive covenants between Plaintiff and its former employees. (DN 86, at PageID # 1043.)

Finally, Plaintiff argues that the Moving Defendants overstate the impact the AEO designation will have on their ability to defend their claim and evaluate Plaintiff's damages. (*Id.*, at PageID # 1043-44.) Plaintiff notes that the Moving Defendants can rely on expert witnesses, to whom disclosure is permitted under AEO designations, to evaluate Plaintiff's damages. (*Id.*, at PageID # 1044.) Plaintiff thus argues that any prejudice to the Moving Defendants is outweighed by the risk of harm to Plaintiff. (*Id.*)

In reply, the Moving Defendants argue that *Specialty* is distinguishable from this case, because in *Specialty*, the information at issue was more sensitive in that it contained the names of every customer that bought to specific products and the business's corresponding net profits. (DN 89, at PageID # 1062-63.) In contrast, the Moving Defendants note that the information at issue here does not include: "(i) customers; (ii) expenses; (iii) internal labor costs or overhead; (iv) pricing information; or (v) profit margins for any given customer(s), product(s), or service(s)." (*Id.*, at PageID # 1063.) They reiterate that the gross profit would receive protection

6

with the Confidential designation and that the more detailed expense information will remain designated AEO.  (*Id.*)

The Court finds that Plaintiff has met its burden of establishing that the AEO designation is proper.  First, there is no reason to believe that Plaintiff made the AEO designations in bad faith.  Plaintiff swore, through its Chief Operating Officer, Jarrod Watcher, that its financial information is not available to the public and is only accessible to a small number of its employees with whom it requires confidentiality agreements prohibiting disclosure.  (DN 86-1, at PageID # 1048.)  Plaintiff further established that traffic control and safety is a "highly competitive industry."  (*Id.*)  Among the moving Defendants is Safe Zone, LLC, a direct competitor with Plaintiff that only recently entered the market.  Plaintiff established that disclosing the gross profit information, the Moving Defendants can easily derive Plaintiff's profit margins over the last three years, and illustrated specifically how they could use that information to their advantage and Plaintiff's detriment, such as by disclosing it to Plaintiff's customers to harm their relationship or by tailoring their prices to undercut Plaintiff in the market.  While the Agreement prohibits this intentional malfeasance, once the Moving Defendants take possession of the gross profit figures, they cannot unlearn the proprietary information about Plaintiff's business. Based on these facts, the Court finds that Plaintiff has met its burden of showing that "disclosure to [the Moving Defendants] is likely to be damaging regardless of steps taken to protect it." (DN 66-2, at PageID # 907.)

The Court addresses the Moving Defendants' concern that they will be prejudiced by the remaining AEO designation.  The Court recognizes the Moving Defendants' right to be noticed of the basis of Plaintiff's claims against then and their counsel's duty to keep them reasonably informed of matters within the scope of their representation.  The Court does not believe that a

7

restriction on viewing the documents at issue undermines these principles. While the gross profit information is relevant to Plaintiff's claim for damages, the Moving Defendants have access to other information that bears down on those claims, such as Plaintiff's total sales, which Plaintiff has agreed to designate only as Confidential. The AEO designation does not prevent the Moving Defendants' counsel from discussing the information concerning Plaintiff's income with their clients or sharing their impressions about how the documents relate to Plaintiff's claims. Further, the documents at issue have not been entered on the record and have not yet been relied upon to request a determination by the Court aside from the instant Motion. Should the importance of the documents at issue to this action increase, the Court will revisit the propriety of the AEO designation as it deems necessary.

IV. ORDER

Accordingly,

IT IS HEREBY ORDERED that The Moving Defendants' motion to overrule Plaintiff's AEO designation (DN 84) is **DENIED without prejudice**.

Colin H Lindsay, Magistrate Judge
United States District Court

June 25, 2021

cc: Counsel of record