UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


AWP, INC.                                                                    PLAINTIFF


v.                                          CIVIL ACTION NO. 3:19-CV-00734-CRS


SAFE ZONE SERVICES, LLC, *et al.*                                          DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court on the Joint Motion of Defendants Samantha Bartley, Virginia Glidewell, David Miller, Tony Whited, Jamaizz Baker, Mary DeCruz, George Kirby, Tikesha McLean, Anthony Cox, Laquana Persley, Bruce Cox (collectively, the "Former Employees"); Safe Zone Services, LLC ("Safe Zone"); United Electric Company, Inc. ("United"); Daniel Walsh ("Walsh"); and Mark Hatcher ("Hatcher") (Former Employees, Safe Zone, United, Walsh, and Hatcher together referred to as "Defendants"), for Attorney's Fees and Expenses and Entry of Final Judgment. DN 121. Plaintiff AWP, Inc. ("AWP") has responded (DN 125) and Defendants have replied (DN 126). Thus, the matter is ripe for adjudication.

### I.

AWP is a traffic safety company incorporated and organized under the laws of the State of Ohio and with a principal place of business in Ohio. First Amended Complaint, DN 54, PageID# 700, 704. AWP has operations in Louisville, Kentucky and, "[a]mong other things, . . . supplies its customers with work crews and equipment to provide traffic control operations at active traffic control sites, designs and implements traffic control patterns, and oversees traffic control procedures." *Id.*, PageID# 704. Former Employees B. Cox, Whited, Baker, DeCruz, Kirby,

1

McLean, A. Cox, Persley, and Miller were employed by AWP as "protectors" (also referred to, variably, as "flaggers"); Glidewell worked as an Assistant Facility Manager. DN 95-2, PageID# 1183, 1185. All Former Employees signed a confidentiality, non-competition, and non-solicitation agreement (the "Employment Agreement"), either upon accepting employment with AWP or as a condition of accepting a promotion and increased wages with AWP. DN 54, PageID# 707.[1]

United Electric is "an electrical contractor that performs work for utilities in the Louisville area," including for LG&E and Kentucky Utilities ("KU") (LG&E and KU are collectively known as "PPL Corporation" or "PPL"). DN 95-2, PageID# 1180, 1193. Until mid-2019, United Electric relied on crews of protectors employed by AWP to control and direct vehicle traffic around jobsites while United Electric electricians performed electrical work for PPL. *Id.*, PageID# 1180. In August 2019, United Electric formed its own company, Safe Zone, to perform the traffic control services and began providing its own protectors to worksites when United Electric carried out jobs for PPL. *Id.* Defendant Walsh is president of United Electric. Hatcher Depo., DN 95-4, PageID# 1230. Defendant Hatcher is the vice president of the utility division of United Electric and the president of Safe Zone. *Id.*, PageID# 1229.

At some point, Safe Zone began recruiting AWP employees to work for Safe Zone. *See, e.g.*, Miller Statement, DN 96-10 (indicating that Defendant Miller had been contacted by Hatcher about possibly working for Safe Zone). In July 2019, AWP learned of this recruitment and sent a letter to Walsh, informing him that all AWP employees were bound by the Employment Agreement[2] and that AWP would enforce this Employment Agreement against all breaching

---

[1] Bartley was also formerly employed as a Facility Manager for AWP before going to work for Safe Zone, but she did not sign the Employment Agreement and, hence, was not subject the breach of contract claim. DN 95-2, PageID# 1185.

[2] AWP has otherwise indicated that, of the twenty-eight AWP employees hired by Safe Zone, only sixteen were actually bound by the Employment Agreement. DN 106, PageID# 2010.

employees. AWP Letter, DN 96-11. Nonetheless, by October 2019, all Former Employees had been hired by Safe Zone. *Id.*, PageID# 1641.

## II.

On October 10, 2019, AWP filed a complaint in the Western District of Kentucky (DN 1) and then an amended complaint on December 8, 2020 (DN 54). AWP asserted multiple causes of action, including allegations that Defendants had misappropriated trade secrets in violation of the Kentucky Uniform Trade Secrets Act ("KUTSA"), KRS §§ 365.880-365.900. This Court granted summary judgment in favor of Defendants on all claims on March 31, 2022. DN 118. Defendants now petition the Court for an award of attorney's fees and expenses on the grounds that AWP's trade secret claim was brought in bad faith. DN 121.

## III.

Federal courts sitting in diversity will normally apply state "fee-shifting rules that embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991). Under KUTSA, "[i]f a claim of misappropriation is made in bad faith, . . . the court may award reasonable attorney's fees to the prevailing party." Ky. Rev. Stat. § 365.886. Kentucky courts have not articulated what constitutes "bad faith" for the purposes of KUTSA, but "[b]ecause KUTSA is a uniform law, . . . decisions in other jurisdictions provide guidance for its application and construction." *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 788 (W.D. Ky. 2001); *see* Ky. Rev. Stat. § 365.894 ("KRS 365.880 to 365.900 shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of KRS 365.880 to 365.900 among states enacting it.").[3]

---

[3] Of all jurisdictions in the United States, California state courts and Ninth Circuit federal courts have the most well-developed jurisprudence on the issue of awarding attorney's fees under the UTSA. The most widely used interpretation

To find that a trade secret misappropriation claim was brought in "bad faith," the party seeking attorney's fees must evidence the "objective speciousness" of the claim and the opposing party's "subjective misconduct" in bringing or maintaining it. *See Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 534 (6th Cir. 2008) (approving a Michigan federal district court's use of this definition of "bad faith" in the context of awarding attorney's fees in a UTSA claim). "The judge, as the factfinder in the attorney-fee context, is not required to draw all inferences in favor of the non-moving party but instead is permitted to make factual findings in accordance with his or her own view of the evidence." *Degussa*, 277 F. App'x at 536.

### Objective Speciousness

In the context of UTSA, a misappropriation claim is "objectively specious" if it "is completely unsupported by the evidence" or "lacks proof as to one of its essential elements." *See JLM Formation, Inc. v. Form+Pac*, No. C 04-1774 CW, 2004 U.S. Dist. LEXIS 30369, at *2 (N.D. Cal. Aug. 19, 2004).[4] To show "speciousness," a party need not "conclusively prove a

---

of "bad faith" originated in California state courts. *See Gemini Aluminum Corp. v. Cal. Custom Shapes*, 95 Cal. App. 4th 1249, 1261 (2002) (relying on *Stilwell Development, Inc. v. Chen* (C.D.Cal. Apr. 25, 1989, No. CV86 4487 GHK) 1989 U.S. Dist. Lexis 5971). For this reason, many other state and federal courts—including those in the Sixth Circuit—look to California and Ninth Circuit caselaw for guidance on this issue. *See, e.g.*, *Baker Hughes Inc. v. S&S Chem., LLC*, No. 1:14-cv-531, 2016 U.S. Dist. LEXIS 146650, at *14 (W.D. Mich. Oct. 24, 2016) (citing *Gemini*); *Avanti Wind Sys. v. Shatell*, No. 3:14-98, 2015 U.S. Dist. LEXIS 50227, at *5 (W.D. Pa. Apr. 16, 2015) (citing *Gemini*); *Dice Corp. v. Bold Techs., Ltd.*, No. 11-cv-13578, 2014 U.S. Dist. LEXIS 82591, at *38 (E.D. Mich. June 18, 2014) (citing *Gemini*); *Contract Materials Processing v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) (citing *Gemini*). The Sixth Circuit Court of Appeals approved of the California state court's interpretation and application of "bad faith" in *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 534 (6th Cir. 2008). However, besides *Degussa*, the Sixth Circuit has had very little to say on this matter. As such, this Court will look to the jurisprudence of California state courts and Ninth Circuit courts, as well as its application in other jurisdictions, for guidance.

[4] *See also Farmers Edge Inc. v. Farmobile, LLC*, No. 8:16CV191, 2018 U.S. Dist. LEXIS 132536, at *20 (D. Neb. Aug. 7, 2018) ("Objective speciousness may be shown by demonstrating that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm.") (citing *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08CV1992 AJB MDD, 2013 U.S. Dist. LEXIS 14105, 2013 WL 410103, at *7 (S.D. Cal. Feb. 1, 2013)); *Dice Corp. v. Bold Techs., Ltd.*, No. 11-cv-13578, 2014 U.S. Dist. LEXIS 82591, at *40 (E.D. Mich. June 18, 2014) (finding the plaintiff's claim to be "objectively specious" because the plaintiff "did not satisfy any element of a misappropriation of trade secret claim"); *Streamline Packaging, Inc. v. Vinton Packaging Grp., Inc.*, No. 1:06-cv-701, 2007 U.S. Dist. LEXIS 74451, at *5 (W.D. Mich. Oct 3, 2007) ("Objective speciousness exists where there is a complete lack of evidence supporting Plaintiff's claims[.]" (citation and quotation marks omitted)); *Berry v. Haw. Express Serv.*, No. 03-00385 SOM/LEK, 2007 U.S. Dist. 15077, at *47 (D. Haw. Mar. 2,

negative," but rather must "point to the absence of evidence of misappropriation in the record." *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848 (2012).

A plaintiff seeking to establish a trade secret misappropriation pursuant to UTSA must first demonstrate that "the information at issue actually constitutes a trade secret." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 410 (6th Cir. 2006). Under Kentucky law:

> "Trade secret" means information, including a formula, pattern, compilation, program, data, device, method, technique, or process, that:
>> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ky. Rev. Stat. § 365.880(4). A UTSA plaintiff must then show that the trade secret was misappropriated. Kentucky law defines trade secret "misappropriation" to mean:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> 1. Used improper means to acquire knowledge of the trade secret; or
>> 2. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>> a. Derived from or through a person who had utilized improper means to acquire it;
>>> b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

---

2007) (holding that the plaintiff's claim was "objectively specious" because it was "completely unsupported by the evidence" and was "lacking proof as to one of its essential elements" (citations and internal punctuation omitted)); *Contract Materials Processing v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) (finding objective speciousness because the plaintiff failed to evidence "elements of its ostensible misappropriation of trade secrets claims").

> 3. Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ky. Rev. Stat. § 365.880. Thus, "misappropriation" occurs when "the person who uses [or discloses a trade secret] knows or has reason to know, at the time of disclosure or use, that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 30 (6th Cir. 2011). Here, AWP's trade secret claim was objectively specious, as AWP neither identified a trade secret nor offered evidence sufficient to substantiate a claim of misappropriation.

First, AWP's claim that it has a "trade secret" in its "specialized traffic control procedures, techniques, processes, and policies" (DN 106, PageID# 2042) is dubious. A UTSA Plaintiff must "*clearly refer* to tangible trade secret material," not just a "*system* which potentially qualifies for trade secret protection." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998). At no point during litigation did AWP identify a potential trade secret with reasonable particularity and, instead, characterized its training program at a high level of generality. For instance, during his deposition, AWP's Chief Operating Officer, Jarrod Wachter ("Wachter"), described the aspects of employee training that AWP considered "confidential," "proprietary," or "secret":

> Our approach to helping [employees] understand why it is they're doing what they're doing, our approach to understand and recognize hazards just above what's stated in regulation. Our approach in helping them understand how to document those hazards, how to mitigate those hazards, how to interact with our customers in a fashion which helps educate them on what those hazards are. Our rule as it relates to driving. Our package of not just the Smith System, but how we then in turn go and certify them via an observed test and the road test. How we leverage our GPS installations to monitor behavioral driving. The resulting position is an employee that is no longer unskilled, but possesses a level of skill.

DN 106-3, PageID# 2135-36. When asked to provide a more precise explanation with respect to driver training, Wachter stated:

> We specifically invest time and energy in the ride-along with drivers to help them understand what may not be face value in terms of why they're a safe or unsafe driver. We commit safety resources to that and coaching to that. The way we package, like I mentioned, our GPS system.

*Id.*, PageID# 2136.[5] Though slightly less ambiguous, Wachter's latter response still fails to answer the question of exactly what training information is alleged to be protectable under trade secret law.

In general, AWP's identification of its trade secrets is overly vague and overly inclusive. Essentially, AWP asserts that all information in or about its "approach" to training its employees is protectable as a trade secret. This is not only implausible but does not comport with Kentucky's statutory definition of a trade secret.[6]

Second, even assuming AWP has at least one protectable trade secret, AWP has not shown misappropriation. AWP's theory was that the Former Employees took with them in their memory

---

[5] AWP Trainer and Manager Timothy Partin ("Partin") provided equally ambiguous answers during his deposition. For example:

> Q (Defendants' counsel): Tell me what the secret training is, please.
>
> A (Partin). [W]e're teaching our individuals what a pre-job safety briefing is, how to recognize what hazards and dangers are when they're out there. We're also teaching them and certifying safety around vehicles and equipment. We're also actually taking them out of the class and showing them how work zones are set up in the real world doing our presentation through traffic control.

DN 106-1, PageID# 2058-59.

[6] Additionally, besides bald assertions by AWP officials, AWP offers no evidence that its training methods "'afford [AWP] a competitive advantage by having value to [AWP] and potential competitors.'" *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 385 (6th Cir. 2014) (quoting *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 922 (6th Cir. 2008)). "When information has no independent economic value, a claim for misappropriation lacks merit." *Gemini Aluminum Corp. v. Cal. Custom Shapes*, 95 Cal. App. 4th 1249, 1263 (2002) (citation omitted).

the knowledge of AWP's training information and disclosed that information to Safe Zone. *See* DN 121-5, PageID# 2982-83, 2986. AWP rests its entire misappropriation claim on the following:

1. "Safe Zone was an entirely new company and, therefore, had no experience or familiarity in training traffic control employees";

2. "Safe Zone hired former AWP employees that previously received AWP's training"; and

3. "Safe Zone relied on AWP's former employees to train other Safe Zone employees."

DN 118, PageID# 3080. On this basis, AWP maintains that "the trier of fact could reasonably find that AWP's trade secrets were misappropriated." DN 106, PageID# 2043.

To the extent that AWP attempts to assert a "threatened" misappropriation claim under a theory of "inevitable disclosure"—that is, on the theory that an employee who has knowledge of trade secrets when he or she leaves to work for a competitor will "inevitably . . . rely on or disclose" those trade secrets to his or her new employer—AWP has not made the necessary evidentiary showing. *See Degussa*, 277 F. App'x at 534-35 (describing the theory of "inevitable disclosure"). In *Degussa*, the Sixth Circuit approved of a Michigan federal district's court rejection of the inevitable disclosure theory as a basis for a UTSA threatened misappropriation claim, noting that Michigan state courts had not endorsed any such theory, but had held that "'for a party to make a [cognizable trade-secrets claim], the party must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets.'" *Id.* at 535 (quoting *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125, 649 N.W.2d 808, 813 (Mich. Ct. App. 2002)).

Not surprisingly, given the dearth of Kentucky caselaw dealing with KUTSA claims, Kentucky courts have been silent on this matter. However, federal district courts in the Sixth Circuit have relied on the rationale from *Degussa* to reject claims brought under state UTSA laws.

*See Total Quality Logistics, LLC v. Aptive Sys.*, No. 1:16-cv-00335, 2020 U.S. Dist. LEXIS 27049, at *17 (S.D. Ohio Feb. 18, 2020) (citations omitted); *A&P Tech., Inc. v. Lariviere*, No. 1:17-cv-534, 2017 U.S. Dist. LEXIS 211822, at *28 (S.D. Ohio Dec. 27, 2017). Assuming Kentucky would even recognize the doctrine of inevitable disclosure as grounds for a threatened misappropriation claim, AWP merely alleges "the existence of generalized trade secrets" and then relies on the fact that the Former Employees, who purportedly have knowledge of these trade secrets, now work for Safe Zone. *See Degussa*, 277 F. App'x at 535. A threatened misappropriation claim on this basis is untenable.

AWP has also failed to assert a claim of actual misappropriation. While the court recognizes that a plaintiff may rely on circumstantial evidence to establish misappropriation under UTSA, to do so, the plaintiff must show 1. that the defendant had "access" to the plaintiff's trade secret and 2. a "similarity" in the design of the plaintiff's product and the defendant's product. *Stratienko v. Cordis Corp.*, 429 F.3d 592, 601 (6th Cir. 2005) ("Sufficient circumstantial evidence of use in trade-secret cases must demonstrate that (1) the misappropriating party had access to the secret and (2) the secret and the defendant' design share similar features."); *see also Wilson v. Hasbro, Inc.*, No. 3:05-CV-457-R, 2009 U.S. Dist. LEXIS 26113, at *9 (W.D. Ky. Mar. 27, 2009) (quoting *Stratienko*). "[O]nce evidence of access and similarity is proffered, it is 'entirely reasonable for the jury to infer that defendant used plaintiff's trade secret.'" *Id.* (quoting *Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994) (internal brackets omitted)).

Even if AWP could convince a trier of fact that "it is more probable than not"[7] that the Former Employees had access to one or more trade secrets, AWP neither argues nor evidences any

---

[7] *See Stratienko*, 429 F.3d at 600 (stating that, when relying on circumstantial evidence in a misappropriation claim, the evidence must be sufficient for a "'trier of fact [to] draw inferences which convince him that it is more probable

similarities between its training program and that of Safe Zone. Therefore, assuming a Kentucky court would allow a KUTSA plaintiff to rely entirely on circumstantial evidence to prove misappropriation, AWP's claim is not viable.

In sum, because AWP has neither established the existence of a trade secret nor made a proper showing of misappropriation, the Court finds that AWP's KUTSA claim was objectively specious.

### Subjective Misconduct

Subjective "misconduct," or subjective "bad faith," may be inferred by evidence that a plaintiff to an UTSA claim "intended to cause unnecessary delay, filed the action to harass [defendant], or harbored an improper motive." *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1278 (2009) (citing *Gemini Aluminum Corp. v. Cal. Custom Shapes*, 95 Cal. App. 4th 1249, 1263 (2002)). Defendants argue that AWP filed the KUTSA claim with the improper purpose of stifling Safe Zone as a competitor. DN 121, PageID# 2863.

As proof, Defendants cite the testimony of Timothy Partin. DN 126, PageID# 3125. First, Defendants claim that Partin testified that AWP had not taken adverse legal action against other employees who had left AWP to go work for other competitors, suggesting that AWP singled Safe Zone out. DN 121, PageID# 2863. However, Partin actually stated that he did "not know" if legal action had been taken in those cases. DN 121-4, PageID# 2975. Second, Defendants insinuate that AWP knew that the training materials did not constitute trade secrets because "Partin testified that AWP's training was standard, generic safety guidance that was not unique to AWP and in fact publicly available through sources." DN 126, PageID# 3125 (citing DN 121-4, PageID# 2968). But this also mischaracterizes Partin's testimony, as elsewhere in his deposition Partin stated that

---

than not that what the plaintiffs allege happened did in fact take place'" (quoting *Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*, 914 F.2d 556 (4th Cir. 1990)).

AWP incorporated certain customized materials into its training program. DN 95-12, PageID# 1387. The Court, consequently, cannot draw any inferences about AWP's motivation for pursuing the misappropriation claim based on Partin's testimony.[8]

However, a court may infer bad faith "from the speciousness of a plaintiff's trade secret claim." *JLM Formation, Inc. v. Form+Pac*, No. C 04-1774 CW, 2004 U.S. Dist. LEXIS 30369, at *4 (N.D. Cal. Aug. 19, 2004); *Stilwell Dev., Inc. v. Chen*, No. CV86-4487-GHK, 1989 U.S. Dist. LEXIS 5971, at *13 (C.D. Cal. Apr. 25, 1989) (stating that the "knowing persistence in an invalid claim . . . demonstrates plaintiffs' subjective bad faith in causing the needless expenditure of money in defense of the trade secret claim."). "A court may [also] determine a plaintiff's subjective misconduct by examining evidence of the plaintiff's knowledge during certain points in the litigation[.]" *JLM*, 2004 U.S. Dist. LEXIS 30369, at *4. For instance, "[b]ad faith . . . may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised." *Gemini*, 95 Cal. App. 4th at 1264.

The Court has already determined that AWP's lack of evidence rendered its KUTSA claim objectively specious. The record also reveals that Defendants' counsel met with AWP's counsel and "explained the many weaknesses with AWP's case, including the complete absence of any trade secrets" and "encouraged counsel for AWP to avoid litigation, which would only result in costs to all parties[.]" DN 121-2, PageID# 2892. Still, AWP persisted with the KUTSA claim. "'[W]here a plaintiff knows or is reckless in not knowing that its claim for trade secret

---

[8] The other evidence cited by Defendants seems wholly irrelevant to the argument that AWP filed the KUTSA claim in subjective bad faith. Defendants point to the testimony of an AWP official in which the official "agreed that AWP had 'no legitimate business interest' in requiring the Former Employees to sign the Employment Agreement." DN 126, PageID# 3125 (citing DN 121-3, PageID# 2962). Defendants also refer to the Court's findings on summary judgment regarding causation and the legitimate business interest protected by the Employment Agreement. *Id.* It is unclear how any of these statements demonstrate bad faith with respect to the KUTSA claim.

misappropriation has no merit,'" a finding of subjective misconduct is appropriate. *Contract Materials Processing v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) (quoting *Computer Econ., Inc. v. Gartner Group, Inc.*, 1999 U.S. Dist. LEXIS 22204, at *18 (S.D. Cal. December 14, 1999)). The Court finds that AWP should have known that its KUTSA claim lacked merit and, thus, demonstrated subjective bad faith in choosing to continue with the litigation of that claim.

Having found that AWP's KUTSA claim was objectively specious and brought in subjective bad faith, the Court may award reasonable attorney's fees under Ky. Rev. Stat. § 365.886.

**IV.**

Defendants also that the Court should award attorney's fees pursuant to its inherent powers. DN 121, PageID# 2871-72. "[A] court may assess attorney's fees when a party has '"acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)). This requires a finding that a party has acted in "bad faith" or engaged in conduct "tantamount to bad faith." *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003) (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

In the Sixth Circuit, an award of attorney's fees is only proper if a court finds that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)). The "'mere fact that an action is without merit

does not amount to bad faith.'" *BDT Prods. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010) (quoting *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 21 (2d Cir. 1980)). In other words, "in order for a court to find bad faith sufficient for imposing sanctions under its inherent powers, the court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* "Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose. . . . These sorts of conduct cannot be demonstrated solely by the fact that a party knowingly pursued a meritless claim or action." *Id.* at 754.

For reasons previously discussed, the Court finds that Defendants have failed to show that AWP filed the KUTSA claim for an improper purpose and, hence, will decline to exercise its inherent powers to award attorney's fees.

## V.

Though the Court has determined that an award of attorney's fees is appropriate under the provisions of KUTSA, the instant motion will be denied because Defendants have not shown that the fees they seek are reasonable. "Kentucky has long adhered to the American Rule. Generally, 'in the absence of a statute or contract expressly providing therefor, attorney fees are not allowable as costs, nor recoverable as an item of damages.'" *Mo-Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 906 (Ky. Ct. App. 2015) (quoting *Cummings v. Covey*, 229 S.W.3d 59, 61 (Ky.App. 2007)). While KUTSA provides a statutory basis for the recovery of attorney's fees if a misappropriation claim is made in bad faith (Ky. Rev. Stat. § 365.886) Defendants cite no contractual or statutory basis for the recovery of fees incurred in defending the other claims in this case. The only way Defendants could possibly recover those fees or expenses would be to show

that all the claims are "related" to the KUTSA claim. *See Dice Corp. v. Bold Techs., Ltd.*, No. 11-cv-13578, 2014 U.S. Dist. LEXIS 82591, at *56 (E.D. Mich. June 18, 2014) (citing *Hensley*, 461 U.S. at 434-35) ("It is well-established law that a party is entitled to attorney's fees as a prevailing party only on a particular claim, but not on other claims in the same lawsuit, unless they are 'related claims.'"); *see also Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997) ("[A] party entitled to attorney's fees as a prevailing party on a particular claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any 'related claims.'" (citing *Hensley*, 461 U.S. at 434-35)).

Defendants argue that they have made this showing because the "central factual allegation" behind all the claims asserted by AWP was "the Former Employees had access to confidential information and/or trade secrets and used it to assist in unfair competition with AWP." DN 126, PageID# 3126. Defendants further argue that their "defense of this central allegation was the core defense to all of Plaintiff's causes of action" and insist:

> It would be unfair, and perhaps impossible, to force Defendants to determine what portion of their attorneys' fees focused on just the KUTSA claim, particularly when Defendants' counsel would have defended this lawsuit in the exact same way had the KUTSA claim been the only cause of action or had the non-KUTSA claims been the only causes of action.

*Id.*; DN 121, PageID# 2871. On this basis, Defendants maintain that they are entitled to all attorneys' fees and expenses incurred in the defense of this case. DN 121, PageID# 2871.

Unfortunately, Defendants' argument does not hold up under scrutiny. For the purposes of awarding attorney's fees and expenses, "claims are related if they 'involve a common core of facts or [are] based on related legal theories.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 902 (9th Cir. 1995) (quoting *Hensley*, 461 U.S. at 434-35). Besides the KUTSA claim, AWP

14

asserted six other causes of actions against Defendants: 1. breach of contract, 2. tortious interference with contract, 3. tortious interference with business relationships, 4. breach of fiduciary duty, 5. unfair competition, and 6. civil conspiracy. DN 54, PageID# 720-28. Each of these claims relied on a different "core of facts" and advanced different legal theories than those behind the KUTSA claim.

In defending against these claims, Defendants utilized a number of strategies that were completely unrelated to the defense of the KUTSA claim, including:

1. attacking the enforceability of the non-compete provision of the Employment Agreement (DN 95-2, PageID# 1195-1203);

2. pointing to AWP's inability to evidence causation (*Id.* PageID# 1203-06);

3. noting AWP's failure to show that Defendants secured any business through "improper means" (*Id.*, PageID# 1208);

4. arguing that the Former Employees owed no fiduciary duties to AWP and that, even if such duties existed, there was no breach (*Id.*, PageID# 1211-14); and

5. contending that AWP offered no evidence that Defendants intended to deceive the public (*Id.*, PageID# 1214-15).

It is thus inaccurate for Defendants to argue that the entire action was centered around the allegation of trade secret misappropriation or that the defense of this case would have been identical had AWP only asserted the KUTSA claim. Therefore, Defendants are not entitled to an award of the fees and expenses incurred in defending the remaining claims.

To recover fees and expenses for the KUTSA claim, Defendants must show that the monetary request is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate

hours expended and hourly rates."). Additionally, "[t]he applicant should . . . maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437.

In Kentucky, courts determine whether requested fees are reasonable by considering the following factors:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved and the results obtained; (5) The time limitations imposed by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation and ability of the lawyer or lawyers performing the services; (8) Whether the fee is fixed or contingent.

*Ky. Bar Ass'n v. Chesley*, 393 S.W.3d 584, 594 (Ky. 2013) (quoting Ky. Sup. Ct. R. 3.130(1.5(a)).

Defendants maintain that they are entitled to the fees and expenses associated with the litigation of all claims and, for this reason, they made no effort to pare the fee request to those efforts that were directly related to the defense of the KUTSA claim. Unfortunately, Defendants' "kitchen sink" approach captures fees that are not in any way connected to the KUTSA claim. *See, e.g.*, DN 121-2, PageID# 2929-30, 2932, 2939 (charges associated with designation of documents as "Attorneys' Eyes Only"); *Id.*, PageID# 2916-17, 2948-49, 2950 (charges associated with responding to AWP's Motion for Partial Summary Judgment); *Id.*, PageID# 2915 (charges related to research to dispute the restrictive covenants at issue in this case).[9] Though Defendants maintain that "[i]t would be unfair, and perhaps impossible, to force Defendants to determine what portion

---

[9] AWP also claims that some of the charges provided in counsel's declaration are for completely different matters. DN 125, PageID# 3085 n. 3.

of their attorneys' fees focused on just the KUTSA claim," Defendants are responsible for proving the reasonableness of the fee request. Simply put, Defendants have not met their burden.

The Sixth Circuit has upheld the denial of attorney's fees in similar circumstances. *See EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 404 (6th Cir. 2020) (affirming the district court's denial of attorney's fees because "a party that fails to separate out its fees so that a court can sufficiently determine reasonable fees has not met its burden"). As there is no way for this Court to determine which of the requested fees are related to the defense the KUTSA claim or to consider the reasonableness of such fees in light of the appropriate factors, Defendants' Motion for Attorney's Fees and Expenses will be **DENIED** in a separate order.

July 21, 2022

Charles R. Simpson III, Senior Judge
United States District Court

17